IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON LEE EDWARDS,

        Plaintiff,                              Civ. No. 3:16-cv-01416-MC

        v.                                      OPINION AND ORDER

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

        Defendant.

_____

MCSHANE, Judge:

Plaintiff Jason Lee Edwards brings this action for judicial review of the Commissioner's decision denying his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On October 14, 2010, Edwards filed his application for SSI and DIB, alleging disability as of that date. After a hearing, the administrative law judge ("ALJ") determined Edwards was not disabled under the Social Security Act from October 14, 2010 through August 30, 2012. Tr. 597.[1] Edwards appealed and, following a stipulated remand from the district court, the ALJ conducted two more hearings. Following those hearings, the ALJ again concluded Edwards was not disabled. Tr. 554-55. This appeal followed.

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

Edwards argues the ALJ erred in finding him less-than credible, in rejecting the opinion of his treating physician and in weighing other medical opinions, in not finding several impairments to be "severe" at step two, in rejecting the opinions of Edwards's mother and father, and in formulating an insufficient residual functional capacity ("RFC") at step five, leading to an erroneous hypothetical to the vocational expert ("VE"). Many of Edwards's assignments of error are somewhat generalized arguments essentially attacking the RFC while arguing the evidence demonstrates Edwards is disabled. I consider Edwards's main arguments to be that the ALJ erred in rejecting the opinion of his treating physician and in finding that Edwards could read at the General Educational Development ("GED") level of one. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its

judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

As relevant here, the ALJ ultimately found Edwards had the RFC to perform light work provided: the work was unskilled, entry level work in a routine environment; Edwards have no "transactional" work with the public; the job has GED reasoning, language, and mathematical development levels of one. Tr. 536. Based on the VE's testimony, a person with such an RFC could perform the jobs of laundry worker and room cleaner. Tr. 544. As noted, Edwards makes several assignments of error.

I turn first to the argument that the ALJ improperly rejected the medical opinion of Dr. Steve Becker, Edwards's longstanding treating physician. Dr. Becker was Edwards's primary care physician for many years. Dr. Becker treated Edwards for many ailments ranging from tooth

3 – OPINION AND ORDER

aches to anxiety issues to back problems. Edwards points to three comments Dr. Becker wrote in chart notes. On September 20, 2011, Dr. Becker noted, "applying for disability but has been denied, now going through court; it would seem unlikely he can pursue gainful employment." Tr. 438. On February 2, 2012, Dr. Becker commented, "long standing hx psycho-neuro dysfunction with diagnosis of dementia along with depression and anxiety; he is unlikely to be able to maintain gainful employment; he would seem an appropriate candidate for disability." Tr. 435. On May 11, 2015, Dr. Becker wrote, "Long standing history of learning disability, cognitive dysfunction and now with diagnosis of Gerstamann syndrome per specialty clinic in 2010—he has been unable to pursue any reliable employment, he continues to seek disability which would appear to be appr[o]priate given his long standing limitations." Tr. 727.

> Regarding Dr. Becker's opinions, the ALJ concluded:
>
> In January 2012 and again in June 2015, Dr. Becker opined that the claimant was unlikely to be able to maintain gainful employment and he was unable to pursue "any reliable employment." He felt the claimant would be an appropriate candidate for disability. Little weight is given to these opinions. To begin, they are conclusory and not offered in functional terms. Additionally, they are inconsistent with the claimant's own reports of searching for work and his own report that he believed he was unable to obtain work due to a lack of a high school diploma. They are also inconsistent with Dr. Becker's treatment records. For example, his treatment note from May 2015 shows the claimant's neurologic examination was normal, and on the SLUMS examination, the claimant's score of 22 was consistent with mild cognitive dysfunction. Moreover, his opinion from 2015 appears to be in part based on his belief the claimant was diagnosed with Gerstmann's syndrome in 2010, however, a close reading of Dr. Mega's report shows this was a "likely" diagnosis and not an unequivocal diagnosis, and moreover, a subsequent MRI of the claimant's brain was negative."

Tr. 542 (internal citations omitted).

I agree with the ALJ's finding that most of Dr. Becker's comments regarding Edwards's ability to work "are conclusory and not offered in functional terms." A statement from a physician that one is "disabled" or "unable to work" is not a medical opinion but rather an opinion on the ultimate determination of disability, which is an administrative finding reserved

for the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see also McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (treating physician's belief that claimant "could not work at all" is not binding on the ALJ). Additionally, physicians typically neither consult nor have the expertise of a VE as to whether a claimant is "disabled" under the regulations. *McLeod*, 640 F.3d at 885. Dr. For those reasons, Dr. Becker's rather conclusory statements are not necessarily "medical opinions" in the social security context.

Additionally, the ALJ pointed out the contrast between Dr. Becker's May 2015 statement that Edwards "has been unable to pursue any reliable employment" with Edwards's own testimony at the February 2016 hearing that he dropped off applications at "every place in the Hood River. There wasn't one business I didn't go to . . . ." Tr. 568. The ALJ's reliance and interpretation of this contradiction was reasonable in light of the record, particularly so when Edwards own belief at the time was that he was being turned down for work because of his lack of a high school diploma.

The ALJ also considered the contradictions between Dr. Becker's "opinion" and Dr. Becker's own records. While Dr. Becker believed Edwards was "an appropriate candidate for disability," the results of objective testing pointed to milder impairments. This case largely turns on Edwards's cognitive abilities. In that regard, Dr. Becker referred Edwards to Dr. Michael Mega at Providence Cognitive Assessment Clinic for a memory diagnosis. Tr. 333. On September 30, 2010, Dr. Mega examined Edwards. The examination and tests revealed Edwards fulfilled the criteria for dementia. Tr. 333. Dr. Mega summarized the results of the examination:

> Cognitive function shows no delirium, no memory impairment, mild word-finding language disturbance but severe dyslexia mild comprehension difficulty and acalculia, no visuospatial impairment, and mild executive dysfunction. The elemental neuroglogical exam shows no significant abnormalities.

Tr. 333.

5 – OPINION AND ORDER

Edwards's Functional Assessment Staging score of 4 equated to "Mild Impairment" meaning "Decreased ability to perform complex tasks, e.g., planning dinner for guests; handling personal finances; difficulty marketing." Tr. 337.[2]

Generally, more weight is given "to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Because Dr. Becker referred Edwards to Dr. Mega specifically to test his memory, the ALJ's reference to these results (specifically to the finding that Edwards had "no memory impairment") is not an example of "cherry picking." Rather, it is a reasonable interpretation of the record, and a reasonable weighing of conflicting evidence or opinions.

Dr. Becker wrote, "and now with diagnosis of Gerstamann syndrome per specialty clinic in 2010—he has been unable to pursue any reliable employment . . . ." Tr. 727. The ALJ properly pointed out that Dr. Mega did not diagnose Edwards with Gerstamann syndrome, but instead opined "Gerstmann's Syndrome is the most likely diagnosis." Noting Dr. Becker's opinion appeared to rely in part on a questionable diagnosis is supported by the record.

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Considering the case revolves in large part around Edwards's cognitive abilities, the ALJ properly accorded less weight to Dr. Becker's opinion on that issue, and more weight to the specialist. Although Edwards argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *Gutierrez*, 740 F.3d at 523 (quoting *Reddick*, 157 F.3d at 720-21) ("If the evidence can reasonably support either affirming or

---

[2] Edwards's RFC does not require that he perform complex tasks. Instead, the ALJ limited Edwards to performing "unskilled, entry level work in a routine environment" in jobs requiring a GED level of one. Tr. 537.

reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.'")). The ALJ provided "specific and legitimate reasons supported by substantial evidence in the record" for assigning little weight to Dr. Becker's "opinions." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).[3]

Edwards also argues the ALJ erred in finding him less-than credible as to the extent of his limitations. The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). The ALJ in this case supported his credibility determination with references to several of the above factors.

The ALJ noted that Edwards's alleged limitations contrasted with his activities of daily living. The ALJ pointed again to Dr. Mega's report, where Edwards reported independent functioning in all aspects other than medical and money management. Edwards's own testimony on this matter supports the finding that Edwards's impairments do not significantly impact his activities of daily living. The ALJ also pointed out that for much of the relevant time period,

---

[3] Edwards also argues his RFC should have included the recommendation from DDS psychological consultants that he requires short, oral instructions in a routine setting. As discussed below, the record supports the ALJ's finding that Edwards is capable of reading at a GED level of one. Additionally, the record, including Edwards's activities of daily living and past employment history, support the ALJ's finding that Edwards can perform unskilled, entry level work in a routine environment.

7 – OPINION AND ORDER

Edwards lived alone with his two adolescent daughters. Tr. 541. That evidence contrasts with Edwards's alleged limitations.

The ALJ also found that Edwards's conservative treatment suggested his impairments are not as severe as alleged. Regarding Edwards's degenerative disc disease, the ALJ noted that Edwards declined injections because stretching controlled his back pain. Doctors regularly described Edwards as having normal strength and gait, with no muscle atrophy. And despite alleging severe depression, Edwards did not seek mental health treatment.[4] The ALJ provided "specific, clear and convincing reasons" for finding Edwards less-than credible regarding the extent of his limitations. *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Charter*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Edwards argues the ALJ erred in rejecting the testimony of his parents. That testimony largely mirrored Edwards's own testimony. The ALJ accorded that testimony little weight because it conflicted with other evidence in the record. Specifically, the ALJ contrasted the lay witness testimony regarding Edwards's inability to remember things against the objective results of Dr. Mega's cognitive assessment findings. Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122. As noted, the lay witness testimony essentially aligned with Edwards's own testimony.

Edwards also argues the ALJ provided an incomplete hypothetical to the VE at step five. "Specifically, the ALJ relied on an incorrect hypothetical, which improperly placed the

---

[4] On September 6, 2011, Dr. Becker noted, "Provided list of mental health provider and explained importance of therapy. He agreed to begin with community mental health program." Tr. 516.

8 – OPINION AND ORDER

individual's reading, math, and language levels at one, despite convincing evidence that he is unable to read, write, or perform simple math." Pl. Br., 18. In contrast with Edwards's own statements, the only objective evidence in the record on this subject demonstrates that Edwards is able to read and write at GED level one. A GED level of one is "somewhere between first and third grade capacity." Tr. 559.

During Dr. Mega's examination, he wrote "Close Your Eyes" on a piece of paper and asked Edwards to read it and follow its instructions. Tr. 339. Edwards complied as Dr. Mega noted "Able to read close your eyes slowly—had to do this in order to follow command." Tr. 340. Additionally, Edwards successfully completed another task, to "Make up and write a sentence about anything. (Must have noun and verb)." Tr. 339. The ALJ's RFC, where Edwards could read at a GED level of one adequately captures Edwards's abilities. It certainly is a more accurate representation than finding Edwards "illiterate".

The VE discussed this topic somewhat extensively at the final hearing. The VE testified, "If there's no capacity to work with the written language whatsoever, I think that any employment is very problematic." Tr. 560. Here, the VE discussed an individual with "a complete inability to read or to match numbers, or items, or words, and so that would be a open and closed public sign, an employees only sign . . . ." Tr. 560. That hypothetical, however, does not describe Edwards. Instead, the results of objective testing supports the ALJ's finding that Edwards could work in jobs requiring a GED level of one.[5]

/ / / /

/ / / /

/ / / /

---

[5] Edwards's step two arguments fail as the RFC adequately captured all of his limitations, even those the ALJ found to be non-severe at step two. Therefore, any step two error is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 7th day of August, 2017.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge